John Malone, PLLC
5400 Bosque Blvd., Ste. 308
Waco, Texas 76710
(254) 772-3722
Email: john@johnmalonepc.com
Attorney for Security Bank of Crawford

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OUTRIGHT AVIONICS, LLC | § | CASE NO. 20-32115 |
| | § | CHAPTER 7 |
| | § | |

### UNOPPOSED MOTION OF SECURITY BANK OF CRAWFORD
### FOR RELIEF FROM STAY

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MATTER ON JULY 7, 2020 AT 1:00 P.M. IN COURTROOM 401, 515 RUSK, HOUSTON, TEXAS 77002.

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Movant, Security Bank of Crawford, by and through the undersigned attorney, and in conjunction with the bankruptcy filed by OutRight Avionics, LLC, ("Debtor") and moves the Court as follows:

I.

SUMMARY OF RELIEF REQUESTED

Movant requests relief from the automatic stay to exercise its state law remedies to take possession of and sell certain items of personal property owned by Debtor on which Movant has a perfected security interest.

II.

JURISDICTION

1. This Motion is brought pursuant to 11 U.S.C. Section 362(d) and in accordance with Rule 9014 of the Bankruptcy Rules.

2. On or about April 7, 2020, Debtor filed its petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C., for an order of relief.

III.

FACTS

3. On or about April 7, 2020, Debtor and Respondent herein, filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code, thereby initiating the above-referenced Bankruptcy Case (the "Bankruptcy").  Christopher R. Murray is the duly appointed and acting Trustee in the Bankruptcy.

4. Movant originally loaned $324,035.00 (the "Original Loan") to the Debtor, OutRight Avionics, LLC ("Debtor"), as evidenced by a Promissory Note dated October 3, 2018, in the original principal amount of $324,035.00 (the "Original Note"). The Debtor also executed a Commercial Loan and Security Agreement dated October 3, 2018, pledging the personal property of Borrower (the "Property") as security for repayment of the Indebtedness (the "Original Security Agreement" ). On October 4, 2018, Movant filed a financing statement covering the Property, Filing Number 18-0035103920, with the Texas Secretary of State (the "Financing Statement"). The Original Note matured on January 1, 2019.

5. Movant renewed the Original Loan and increased the loan amount to $417,634.40 (the "Renewal Loan") on February 15, 2019, as evidenced by a Promissory Note dated, February 15, 2019 (the "Renewal Note"). The Debtor also executed an additional Commercial Loan and Security Agreement dated February 15, 2019, pledging the Property as security for repayment of the Renewal Loan (the

"Security Agreement") and secured by the Financing Statement dated October 4, 2018. The Renewal Note, the Security Agreement and the Financing Statement are attached hereto as **Exhibit A**.

6. Movant is the current owner and holder of the Renewal Note.

7. Debtor is in default on the obligation to Movant in that the Debtor has failed to make the regular monthly installment payments under the Note when due and owing pursuant to the terms of the Note.

8. As of June 5, 2020, the status of the indebtedness was as follows:

   a. Debtor is presently due for the February, March, April and May, 2020 monthly payments. Payments are currently $15,258.64 per month. As of June 5, 2020, Debtor is due for $61,034.56 in past due payments and $5,340.51 in late fees for a total of $66,375.07.

   b. The unpaid principal balance due and owing to Movant is $275,003.99.

9. Debtor has no equity in the Property.

10. The Trustee has abandoned the Property as reflected by Trustee's Notice of Abandonment, Document #17.

IV.

RELIEF FROM THE STAY

11. Movant requests that the Court terminate the automatic stay provisions of the Bankruptcy Code to allow Movant to exercise all of its rights and remedies against the Debtor under state law, including but not limited to the repossessing and selling of the Property. Good cause exists for the lifting of the automatic stay because the Debtor has no equity in the Property. In addition, the Property is not necessary for an effective reorganization of the Debtor.

12. In the alternative, Movant alleges that cause exists for the lifting of the stay in that the Debtor has not offered Movant adequate protection for its interest in the Property and Movant's interest is not adequately protected.

V.

The provision of Rule 4001(a)(3) should be waived and Movant be permitted to immediately enforce and implement any order granting relief from the automatic stay.

WHEREFORE, Security Bank of Crawford, its successors and assigns, prays that

the Court enter an Order:

    A. Granting relief from the automatic stay to allow Movant, its assignees and/or successors in interest, to exercise and enforce its security interest in the Property as if the Stay had not been imposed, including, but not limited to, repossession of its security interest and disposition of the Property, and payment of costs, expenses, and reasonable attorneys' fees in accordance with the terms of the Note; and

    B. Granting such other relief to which Movant may be justly entitled.

Dated June 5, 2020.

Respectfully submitted,
JOHN MALONE, PLLC

By: _____
John Malone
Attorney for Movant
State Bar No.  12874200
5400 Bosque Blvd., Ste. 308
Waco, Texas 76710
(254) 772-3722
Fax No.  (254) 772-3172
Email: john@johnmalonepc.com

## CERTIFICATE OF CONFERENCE

I certify that on June 5, 2020, I conferred with Debtor's attorney, Allison Davison Byman, and was advised this Motion is not opposed by the Debtor.

_____
JOHN MALONE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Relief from Stay has been served upon the (a) all creditors shown on Debtor's service list and (b) the following by electronic means as listed on the Court's ECF noticing systems or by United States first class mail, postage prepaid on this the 5th day of June, 2020.

/s/ John McRae
JOHN MALONE

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED:**

Debtor's Attorney: Allison Davison Byman
7924 Broadway, Ste. 104
Pearland, Texas 77581

**BY REGULAR FIRST CLASS MAIL, POSTAGE PREPAID:**

Debtors: OutRight Avionics, LLC
10078 Airport Road
Conroe, Texas 77303

Trustee: Christopher R. Murray
4119 Montrose Blvd., Ste. 230
Houston, Texas 77006

Trustee's Attorney: Jon Maxwell Beatty
4119 Montrose Blvd., Ste. 230
Houston, Texas 77006


**Security Bank**

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3659 | OUTRIGHT AVIONICS LLC | 3327558 | 02/15/19 | JTW |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $417,634.40 | Not Applicable | 7.250% | 08/15/21 | Commercial |
|  |  | Creditor Use Only |  |  |

## PROMISSORY NOTE
(Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is February 15, 2019. The parties and their addresses are:

**LENDER:**
SECURITY BANK OF CRAWFORD
PO BOX 90
CRAWFORD, TX 76638-0090
Telephone: (254) 486-0003

**BORROWER:**
OUTRIGHT AVIONICS LLC
a Texas Limited Liability Company
10078 AIRPORT RD
CONROE, TX 77303

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

  A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

  B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

  C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

  D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

  E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

  F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

  G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$417,634.40** (Principal) plus interest from February 15, 2019 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.250 percent (Interest Rate).

  A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

  B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

  C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Texas usury laws under Tex. Fin. Code, Ch. 303.

  D. **Accrual.** Interest accrues using an Actual/Actual days counting method.

**4. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

  A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

  B. **Returned Payment Charge.** I agree to pay a fee not to exceed $25.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

  C. **Stop Payment Fee.** A(n) Stop Payment Fee equal to $25.00.

**5. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**6. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in 30 payments. A payment of $15,258.64 will be due March 15, 2019, and on the 15th day of each month thereafter. A final payment of the entire unpaid balance of Principal and interest will be due August 15, 2021.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, then to late charges that are due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**7. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**8. LOAN PURPOSE.** The purpose of this Loan is Refinance both notes to payout thru modification and restructuring of poor performance debt.

**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Commercial Loan And Security Agreement - OUTRIGHT AVIONICS LLC | OUTRIGHT AVIONICS LLC |

**10. GUARANTY.** A Guaranty, dated February 13, 2019, from John Galik (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

A Guaranty, dated February 13, 2019, from Kristin M Galik (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

**11. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.
(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.
(3) You may release, substitute or impair any Property securing this Note.
(4) You, or any institution participating in this Note, may invoke your right of set-off.
(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.
(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.
(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. APPLICABLE LAW.** This Note is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**16. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured

by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**22. WAIVER OF JURY TRIAL.** All of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**23. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

OUTRIGHT AVIONICS LLC

By _(signed)_  
John Galik, Member  
Date 2/15/19

By _(signed)_ Kristin M. Galik  
Kristin M Galik, Member  
Date 2/15/19

**GUARANTOR:**

_(signed)_  
John Galik  
Date 2/15/19

_(signed)_ Kristin M. Galik  
Kristin M Galik  
Date 2/15/19

**LENDER:**

SECURITY BANK OF CRAWFORD

By _(signed)_  
Terry Whitle  
Date _____



Security Bank

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 3659 | OUTRIGHT AVIONICS LLC | 3327558 | 02/15/19 | JTW |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $417,634.40 | Not Applicable | 7.250% | 08/15/21 | Commercial |
| | | Creditor Use Only | | |

## COMMERCIAL LOAN AND SECURITY AGREEMENT
### Single Advance Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is February 15, 2019. The parties and their addresses are as follows:

**LENDER:**
SECURITY BANK OF CRAWFORD
PO BOX 90
CRAWFORD, TX 76638-0090

**BORROWER:**
OUTRIGHT AVIONICS LLC
a Texas Limited Liability Company
10078 AIRPORT RD
CONROE, TX 77303

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

**A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

**B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Agreement. "You" and "your" refers to the Loan's lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. SINGLE ADVANCE.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a term note in the amount of $417,634.40 (Principal). I will receive the funds from this Loan in one advance. No additional advances are contemplated, except those made to protect and preserve your interests as provided in this Agreement or other Loan Documents.

**3. DEMAND.** I agree to fully repay the Loan on demand, but if no demand is made, I will repay the Loan by August 15, 2021.

**4. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of the Secured Debts:

(1) **Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

(2) **All Debts.** All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Security Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**B. Limitations on Cross-collateralization.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**C. Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**D. Property Description.** The Property is described as follows:

(1) **All Assets.** All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims described as follows: All assets including but not limited to accounts recievables, inventory, and equipment owned by Outright Avionics, LLC., securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**E. Duties Toward Property.**

(1) **Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) **Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of

reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) **Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**F. Collection Rights Of The Secured Party.** I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

(1) demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

(2) enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

(3) file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

(4) compromise, release, extend, or exchange any indebtedness of an Account Debtor.

(5) take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

(6) endorse all payments by any Account Debtor which may come into your possession as payable to me.

(7) deal in all respects as the holder and owner of the Account Debtors' obligations.

**G. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Security Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.

(9) make an entry on my books and records showing the existence of this Agreement.

(10) notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**H. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**I. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**5. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**D. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**E. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

**F. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**G. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**H. Loan Purpose.** The purpose of this Loan is Refinance both notes to payout thru modification and restructuring of poor performance debt.

**I. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**J. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**K. Legal Dispute.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**L. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**M. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**N. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**6. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

**B. Frequency.** I will provide to you on an annually basis my financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within   days after the close of each of my fiscal years. Any annual financial statements that I provide you will be audited statements. Tax Returns will be due 45 days following April 15.

(1) Inventory & Equipment Schedule. Monthly, I will provide you with an Inventory & Equipment schedule within 7 days after the end of this reporting period or with the frequency and promptness you otherwise request. The Inventory & Equipment schedule will list the cost and wholesale value of all Inventory & Equipment and all Eligible Inventory & Equipment. The Inventory & Equipment schedule will also identify whether a bailee has possession of the Inventory & Equipment and whether the Inventory & Equipment is represented by a warehouse receipt, bill of lading or similar documents or instruments. The Inventory & Equipment schedule will identify the Accounts Receivable, contracts, collections and property relating to the Inventory & Equipment.

(2) Accounts Receivable Schedule. Monthly, I will provide you with a SIGNED Accounts Receivable schedule within 7 days after the end of this reporting period or with the frequency and promptness you otherwise request.

(3) Signed Financial Statements – Outright Avionics, LLC & John & Kristen Galik. Monthly, I will provide you with SIGNED Financial Statement and P & L Statement for Outright Avionics, LLC and SIGNED Personal Financial Statement for John & Kristen Galik within 7 days after the end of this reporting period or with the frequency and promptness you otherwise request.

**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within   days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within   days after your request.

**7. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

(1) You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

(2) You may discuss my affairs, finances and business with anyone who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

(3) You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your

regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any Insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default, or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

**R. No Change in Capital.** I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent.

**S. Loan Obligations.** I will comply with the terms and agreements contained in this Agreement and in the other Loan Documents.

**T. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. I will keep the Property insured against the risks reasonably associated with the Property. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee clause (or lender loss payable clause) endorsement - naming you as the loss payee. If you require, I will also obtain an "additional insured" endorsement - naming you as an additional insured. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

You may apply the insurance proceeds toward which is owned on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. Your may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

**U. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**V. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**W. Accounts Receivable Collection.** I will collect and otherwise enforce all of my unpaid Accounts Receivable at my cost and expense, until you end my authority to do so, which you may do at any time to protect your best interests. I will not sell, assign or otherwise dispose of any Accounts Receivable without your written consent. I will not commingle the Accounts Receivable proceeds with any of my other property.

**X. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**Y. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

8. **DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following events (known separately and collectively as an Event of Default) occur:

   A. **Payments.** I fail to make a payment in full when due.

   B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

   C. **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

   D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

   E. **Other Documents.** A default occurs under the terms of any other Loan Document.

   F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

   G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

   H. **Judgment.** I fail to satisfy or appeal any judgment against me.

   I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

   J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

   K. **Property Transfer.** I transfer all or a substantial part of my money or property.

   L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

   M. **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

   N. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

9. **REMEDIES.** After I default, you may at your option do any one or more of the following.

   A. **Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

   B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

   C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

   D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

   E. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

   My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

   Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

   Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

   You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

   F. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

   G. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the

Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Loan Agreement will be reasonable notice to me under the Texas Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Loan Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

H. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

I. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**10. COLLATERAL PROTECTION INSURANCE. Property Insurance is required.** I agree to buy insurance on the Property in the amount you specify, subject to applicable law. I shall have the option of furnishing any required insurance either through existing policies of insurance owned or controlled by me or procuring and furnishing the equivalent coverage through any insurance company authorized to do business in Texas or an eligible surplus line insurer to the extent permitted by law. I will name you as loss payee under the policy. I may be required to deliver to you a copy of the collateral protection insurance policy and proof of payment of premiums.

If I fail to meet any of these requirements, you may obtain collateral protection insurance on my behalf. You are not required to purchase any type or amount of insurance. To the extent permitted by law, you may obtain insurance that will cover either the actual amount of unpaid indebtedness or the replacement cost of improvements, subject to policy limits. If you purchase insurance for the Property, I will be responsible for the cost of that insurance, including interest and any other charges incurred by you in connection with the placement of collateral protection insurance to the extent permitted by law. I understand that insurance you obtain may cost significantly greater than the cost of insurance I could have obtained. Amounts that I owe are due and payable upon demand or on such other terms as you require to the extent permitted by law.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. APPLICABLE LAW.** This Agreement is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**13. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**14. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**15. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**16. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**17. WAIVER OF JURY TRIAL.** All of the parties to this Agreement knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Agreement or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**18. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**BORROWER:**

OUTRIGHT AVIONICS LLC

By _____/s/ John Galik_____   Date 2/15/19
John Galik, Member

By _____/s/ Kristin M. Galik_____   Date 2/15/19
Kristin M Galik, Member

**GUARANTOR:**

_____/s/ John Galik_____   Date 2/15/19
John Galik

_____/s/ Kristin M. Galik_____   Date 2/15/19
Kristin M Galik

**LENDER:**

SECURITY BANK OF CRAWFORD

By _____/s/ Terry Whitley_____   Date _____
Terry Whitley, President

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Security Bank of Crawford 254-486-0003

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Security Bank of Crawford
6688 North Lone Star Pkwy
Crawford, TX 76638
USA

**FILING NUMBER:** 18-0035103920
**FILING DATE:** 10/04/2018   10:29 AM
**DOCUMENT NUMBER:** 840911680003
**FILED:** Texas Secretary of State
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME** - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**1a. ORGANIZATION'S NAME:** Outright Avionics, LLC

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10078 Airport Road | Conroe | TX | 77303 | USA |

**2. DEBTOR'S NAME** - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

**3a. ORGANIZATION'S NAME:** Security Bank of Crawford

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6688 N Lone Star Parkway | Crawford | TX | 76638 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All A/R, Inventory, and Equipment owned by Outright Avionics, LLC

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:
  ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box.
  ☐ Agricultural Lien ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
3545

FILING OFFICE COPY